**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS LACOUR, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>NATIONWIDE CREDIT, INC. AND AMERICAN EXPRESS COMPANY, )<br><br>Defendants. ) | Case No. 3:19-cv-03075 |

**CLASS ACTION COMPLAINT**

Now Comes Plaintiff, THOMAS LACOUR ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorney, and brings this Complaint against Defendants NATIONWIDE CREDIT, INC. and AMERICAN EXPRESS COMPANY:

**I.      Parties, Jurisdiction and Venue**

1.      Plaintiff is a resident of Dallas, Texas.

2.      Plaintiff has filed this civil action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq. and violations of the Texas Debt Collection Act ("TDCA") pursuant to Tex. Fin. Code Ann. § 392.

3.      Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337.

4.      Supplemental jurisdiction exists for the TDCA claims pursuant to 28 U.S.C. § 1367.

5.      Defendant NATIONWIDE CREDIT, INC. ("NCI") is incorporated in the State of Georgia and maintains its principal place of business at 1000 Abernathy Road, Suite 200, Atlanta, Georgia 30328.

6.      Defendant AMERICAN EXPRESS COMPANY ("Amex") is incorporated in the State of New York and maintains its principal place of business at 200 Vesey Street, New York, New York 10285.

7.      Plaintiff obtained consumer credit (the "Subject Debt") in the form of a credit card from Amex.

8.       The Subject Debt was incurred for personal and household expenses.

9.      The Subject Debt fell into a default status after Plaintiff was unable to keep up with monthly payment obligations.

10.     NCI is a debt collector, as defined by 15 U.S.C. § 1692a, because it regularly uses the mails and/or telephones to collect, or attempt to collect, directly or indirectly consumer delinquent debts owed or due or asserted to be owed or due to another.

11.     As detailed below, NCI, acting as a debt collector as defined by the FDCPA, mailed a letter to Plaintiff's address in Dallas, Texas in an attempt to collect the Subject Debt.

12.     Venue is proper pursuant to 15 U.S.C. § 6104(f) which provides that "[a]ny civil action brought under subsection (a) in a district court of the United States may be brought in the district in which the defendant is found, is an inhabitant, or transacts business or wherever venue is proper under section 1391 of title 28."

13.     Venue is proper in this District pursuant to 18 U.S.C. § 1391(b) because:

   a.  NCI sent a debt collection letter to Plaintiff's address which is located within this District;

   b.  NCI routinely collects consumer debts in this District on behalf of Amex;

   c.  NCI sent over forty similar letters to other persons living in this District;

   d.  NCI has conducted significant and continuous debt purchase and collection activities within this jurisdiction.

    e.  Amex has conducted significant and continuous debt collection activities within this jurisdiction as defined by Texas law; and

    f.  Defendants, as corporations, are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

## II.    Additional Allegations Applicable to All Counts

14.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because NCI regarded him as a "person obligated or allegedly obligated to pay" the Subject Debt when NCI mailed or caused the Optima Opportunity Letter to be mailed to Plaintiff.

15.    Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. §§ 392.001(1)-(2) as the Subject Debt was in the nature of a consumer debt as it was incurred for personal and household uses.

16.    As a debt collection agency, NCI holds itself out as being "authorized to collect delinquent and defaulted accounts in all states."

17.    Tex. Fin. Code Ann. § 392.001(6) defines "[d]ebt collector" to include a "person who . . . indirectly engages in debt collection."

18.    As discussed below, Amex acted as a "debt collector" because Amex engaged in "debt collection" as defined by § 392.001(5) by contracting with NCI to collect the Subject Debt.

19.    NCI regards the Subject Debt as "arising out of a transactions in which" credit and/or services were obtained by Plaintiff from a creditor where the credit and/or services were "primarily for personal, family or household purposes[.]"

20.    In an attempt to collect the Subject Debt, Amex contracted with NCI which resulted in NCI sending a letter to Plaintiff dated 11/06/2019.

21.    NCI sent the 11/06/2019 letter to Plaintiff in an attempt to collect what it regarded as a consumer debt.

22.    A true and correct image of the 11/06/2019 letter is depicted below:



23.    The 11/06/2019 letter shall be referred to as the "Optima Opportunity Letter".

24.    Above Plaintiff's name, the Optima Opportunity Letter alerted Plaintiff of an "Opportunity to Regain Card Membership" and instructed him to "Call for Details."

25.    The Optima Opportunity Letter explained that American Express had "authorized [NCI] to make you a special offer.  American Express values your previous relationship and would like to offer you the opportunity to regain Card Membership."

26.    The Optima Opportunity Letter informed Plaintiff "[y]ou have been selected to receive an Optima Card application if you pay your balance in full . . . ."

27.    The Optima Opportunity Letter explained that "[y]our application will be approved by American Express unless" and listed four reasons.

28.    The first reason informed Plaintiff that his application would *not* be approved if "[y]ou have an active bankruptcy at the time of your application."

29.    The second reason informed Plaintiff that his application would *not* be approved if "[y]ou have accepted another offer for an Optima account from a different agency or from American Express."

30.    The third reason informed Plaintiff that his application would *not* be approved if "[y]ou have an active American Express account."

31.    The fourth reason informed Plaintiff that his application would *not* be approved if "American Express determines that you do not have the financial capacity to make the minimum payment on this new Optima Card account."

32.    The first three reasons all involve information which would be within the control or knowledge of Plaintiff – i.e., whether she had an active bankruptcy, another Optima Card, or another active American Express account.

33.    Prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff, Amex knew whether Plaintiff had "the financial capacity to make the minimum payment on this new Optima Card account".

5

34.     For example, prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff, Amex could have performed a soft pull of Plaintiff's credit to analyze and learn whether Plaintiff had "the financial capacity to make the minimum payment on this new Optima Card account".

35.     A soft pull of Plaintiff's credit worthiness (prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff) would have provided Amex with sufficient knowledge whether Plaintiff had "the financial capacity to make the minimum payment on this new Optima Card account".

36.     Similarly, a hard pull of Plaintiff's credit worthiness (prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff) would have provided Amex with sufficient knowledge to whether Plaintiff had "the financial capacity to make the minimum payment on this new Optima Card account".

37.     If Amex had obtained a report of Plaintiff's credit worthiness prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff, Amex would have learned whether or not Plaintiff had "the financial capacity to make the minimum payment on this new Optima Card account".

38.     On information and belief, if Amex had obtained a report of Plaintiff's credit worthiness prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff, Amex would have learned that Plaintiff *did not* have the financial capacity to make the minimum payment for the proposed Optima Card.

39.     If a credit pull had revealed that Plaintiff did not have "the financial capacity to make the minimum payment on this new Optima Card account", then Amex should never have instructed NCI to mail out the Optima Opportunity Letter.

40.     As reflected in the Letter, the stated amount of the Subject Debt is $7,264.46.

41.     Prior to instructing NCI to mail the Optima Opportunity Letter to Plaintiff, Amex should have known whether Plaintiff had "the financial capacity to make the minimum payment on this new Optima Card account".

42.     Prior to instructing NCI to mail the Optima Opportunity Letter to other similarly situated consumers (persons, like Plaintiff, with similarly high account balances), Amex should have known whether these consumers had "the financial capacity to make the minimum payment on this new Optima Card account".

43.     As reflected above, prior to instructing NCI to mail the Optima Opportunity Letter to other similarly situated consumers, Amex could have obtained credit reports of similarly situated consumers to determine whether these consumers had "the financial capacity to make the minimum payment on this new Optima Card account".

44.     If Amex did not obtain credit reports of Plaintiff and other similarly situated consumers before  instructing NCI to mail out the Optima Opportunity Letters and the credit reports would have shown that Plaintiff and other similarly situated consumers did not have the financial capacity to make the minimum payment for the proposed Optima Card, the offers provided in each  Optima Opportunity Letter would have been illusory.

45.     Alternatively, upon information and belief, prior to NCI mailing out the Optima Opportunity Letter, Amex had already determined that Plaintiff did not have "the financial capacity to make the minimum payment on this new Optima Card account".

46.     Amex's offer (made through NCI) was illusory and false in the sense that Amex knew – prior to instructing NCI to send the Optima Opportunity Letter - that consumers like Plaintiff (who had an account balance of $2,640.86) did not qualify under the fourth listed reason for the possible denial of the offer.

47.     Amex's offer (made through NCI) was illusory and false in the sense that Amex should have known – prior to instructing NCI to send the Optima Opportunity Letter

- that consumers like Plaintiff (who had an account balance of $2,640.86) would not qualify under the fourth listed reason for the possible denial of the offer.

48.    On information and belief, Amex did not intend to grant Plaintiff's application and those of similarly situated individuals with high account balances. Rather, Amex simply instructed NCI to make the offer as a ruse to trick or entice Plaintiff and persons like Plaintiff into paying off the full amount of their debts.

49.    Defendants' offer was a false and misleading debt collection practice.

50.    Defendants' offer was a false and misleading debt collection practice because Amex could have or should have pre-determined that Plaintiff and similarly situated debtors with high account balances would not qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

51.    Defendants' offer was illusory and misleading.

52.    Defendants' offer was illusory and misleading because attempted to mislead consumers like Plaintiff into paying their debts in hopes of obtaining an Optima Card.

53.    Defendants' offer was illusory and misleading because before Defendants caused or authorized the Optima Opportunity Letter to be sent to Plaintiff, Defendants knew Plaintiff would not be approved for an Optima Card even if she satisfied the Subject Debt.

54.    Amex determines whether consumers will be approved for an Optima Card before it authorizes NCI to send out the Optima Opportunity Letter.

55.    Amex did not intend to grant Plaintiff's application for an Optima Card.

56.    Amex made the offer as a ruse to get Plaintiff and other least supplicated consumers to pay their debts.

57.    NCI is a sophisticated debt collector, and for the reasoning set forth above, it should have known that the fourth hypothetical denial reason listed on the Optima

8

Opportunity Letter was illusory and violated both the FDCPA and the Texas Debt Collection Act ("TDCA").

58.    Amex's conduct in authorizing NCI to issue the Optima Opportunity Letter was done in bad faith if Amex had already determined that Plaintiff was not "qualified" for an Optima Card at the time the Optima Opportunity Letter was mailed.

59.    By using the Optima Opportunity Letter to convey an illusory offer, Defendants falsely, misleadingly and deceptively suggested that Plaintiff and similarly situated consumers like him could obtain an Optima Card by paying off their entire debt – where paying the debt would not lead to them receiving a Optima Card.

60.    Plaintiff and others like him, who received similar letters, could not know whether the Optima Opportunity Letter was legitimate other than to pay off the entire debt, apply for credit and await word from Amex.

61.    Defendants have determined that they collect more money from consumers when the type of language contained on the face of the Optima Opportunity Letter is used.

62.    Defendants sent at least 40 persons with addresses from within this District a similar form Optima Opportunity Letter within one year of the filing of this lawsuit.

63.    Just like Plaintiff, hundreds of consumers who received the Optima Opportunity Letter had a similarly high balanced owed to Amex.  Well over forty consumers who received the Optima Opportunity Letter had a similarly high balance owed to Amex and paid the full amount owed but did not receive an Optima card because of the high balances that they had carried.

64.    Like Plaintiff, well over forty consumers were confused and misled by the illusory offer terms contained within the fourth reason listed in the Optima Opportunity Letter.

65.    Defendants' widespread use of the Optima Opportunity Letter satisfies the elements of typicality and commonality.

66.    The proposed classes can be defined and ascertained by Defendants' records.

67.    The putative class members are so numerous that joinder of all members is impracticable.

68.    The legality of the Optima Opportunity Letter raises question of law and fact that are common to the putative class members.

69.    Plaintiff will fairly and adequately represent the proposed classes.

70.    Plaintiff shall be represented by counsel who is well versed in consumer class actions and the prosecution and defense of FDCPA class actions.

71.    The class periods are limited to one year prior to the filing of this lawsuit and until the unlawful conduct ends. The Optima Opportunity Letter was mailed to hundreds of least sophisticated consumers within this District who owed a debt to Amex.

72.    A class action is superior to other available methods for fairly and efficiently adjudicating the legality of the Optima Opportunity Letter.

**III.    Causes of Action**

**Count I – The Optima Opportunity Letter Violates § 1692e of the FDCPA**

73.    Plaintiff realleges the above paragraphs against Defendant NCI as though fully set forth herein.

74.    Section 1692e of the FDCPA, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

75.    NCI violated Section 1692e of the FDCPA when it provided Plaintiff and others similarly situated with false, deceptive, or misleading offers of regaining card membership - when it provided Plaintiff and others similarly situated with illusory offers

of regaining card membership - in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

76.     As set forth above, the Opportunity Offer was illusory and thus false, deceptive, and/or misleading because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

77.     Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

78.     The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters from NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

a.  declare that the Optima Opportunity Letter violates the FDCPA;

b.  enjoin Defendant NCI from using the Optima Opportunity Letter in conjunction with any future collection efforts;

c.  award Plaintiff statutory damages of up to $1,000;

d.  award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter;

> e. award class members maximum statutory damages; and
>
> f. award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count II – The Optima Opportunity Letter Violates § 1692e(2)(A) of the FDCPA**

79. Plaintiff realleges the above paragraphs against Defendant NCI as though fully set forth herein.

80. Section 1692e(2)(A) of the FDCPA, prohibits a debt collector from engaging in "[t]he false representation of - the character, amount, or legal status of any debt."

81. NCI violated Section 1692e(2)(A) of the FDCPA when it provided Plaintiff and others similarly situated with illusory offers of regaining card membership - in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of an Optima Card.

82. As set forth above, the Opportunity Offer was illusory and thus false because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

83. Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

84. The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters from NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-

screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

    a. Declare that NCI violated the FDCPA by sending the Optima Opportunity Card;

    b. enjoin Defendant NCI from using the Optima Opportunity Letter in conjunction with any future collection efforts;

    c. award Plaintiff statutory damages of up to $1,000;

    d. award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter;

    e. award class members maximum statutory damages; and

    f. award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count III – The Optima Opportunity Letter Violates § 1692e(10) of the FDCPA**

85.    Plaintiff realleges the above paragraphs against Defendant NCI as though fully set forth herein.

86.    Section 1692e(10) of the FDCPA, prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

87.    NCI violated Section1692e(10) of the FDCPA when it provided Plaintiff and others similarly situated with false and deceptive offers of regaining card membership in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

88.    As set forth above, the Opportunity Offer was illusory and thus false because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly

situated debtors with a high account balance owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

89.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

90.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters from NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

a.    declare that the Optima Opportunity Letter violates the FDCPA;

b.    enjoin Defendant NCI from using the Optima Opportunity Letter in conjunction with any future collection efforts;

c.    award Plaintiff statutory damages of up to $1,000;

d.    award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter;

e.    award class members maximum statutory damages; and

f.    award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count IV - The Optima Opportunity Letter Violates § 1692f of the FDCPA**

91.    Plaintiff THOMAS LACOUR realleges the above paragraphs against Defendant NCI as though fully set forth herein.

92.    Section 1692f of the FDCPA, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

93.    NCI violated Section 1692f of the FDCPA, when it provided Plaintiff and others similarly situated with unfair and illusory offers of regaining card membership in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

94.    As set forth above, the Opportunity Offer was illusory and thus unfair because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with a high account balance owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

95.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

96.    Presenting Plaintiff and other consumers with illusory offers of regaining card membership constituted and "unfair" and/or "unconscionable" attempt to collect the subject debts.

97.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters from NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

    a.  declare that the Optima Opportunity Letter violates the FDCPA;

    b.  enjoin Defendant NCI from using the Optima Opportunity Letter in conjunction with any future collection efforts;

    c.  award Plaintiff statutory damages of up to $1,000;

    d.  award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter;

    e.  award class members maximum statutory damages; and

    f.  award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count V – The Optima Opportunity Letter Violates § 391.304 of the TDCA**

98.    Plaintiff THOMAS LACOUR realleges the above paragraphs against Defendant NCI as though fully set forth herein.

99.    Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

100.    The subject debt is a "debt" "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

101.    NCI is a "debt collector" " and a "third party debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

102.    Section 391.304 of the TDCA, generally states, "a debt collector may not use a fraudulent, deceptive, or misleading representation….."

103.    NCI violated Section 391.304 of the TDCA when it provided Plaintiff and others similarly situated with false, deceptive, or misleading offers of regaining card membership - when it provided Plaintiff and others similarly situated with illusory offers of regaining card membership - in exchange for the full payment of the subject debts -

where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

104.    As set forth above, the Opportunity Offer was illusory and thus false, deceptive, and/or misleading because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

105.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

106.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters by NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

d.  Award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter; and

e. Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b).

**Count VI – The Optima Opportunity Letter Violates § 391.304(8) of the TDCA**

107.    Plaintiff realleges the above paragraphs against Defendant NCI as though fully set forth herein.

108.    Section 391.304(8) of the TDCPA, prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt…"

109.    NCI violated Section 391.304(8) of the TDCA when it provided Plaintiff and others similarly situated with illusory offers of regaining card membership in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

110.    As set forth above, the Opportunity Offer was illusory and thus false because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

111.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

112.    The proposed class members who are defined as follows:

All persons with mailing addresses within this District who were mailed Optima Opportunity Letters by NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

   b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

   c. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

   d. Award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter; and

   e. Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b).

**Count VII – The Optima Opportunity Letter § Section 391.304(19) of the TDCA**

113.    Plaintiff realleges the above paragraphs against Defendant NCI as though fully set forth herein.

114.    Section 391.304(19) of the TDCA, prohibits a debt collector from using "any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

115.    NCI violated Section 391.304(19) of the TDCA when it provided Plaintiff and others similarly situated with false and deceptive offers of regaining card membership in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

116.    As set forth above, the Opportunity Offer was illusory and thus false because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

117.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

118.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters by NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant NCI and in Plaintiff's favor and in favor of putative class members:

a.    Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.    Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c.    Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

d.    Award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter; and

e.    Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b).

**Count VIII – The Optima Opportunity Letter Violates § 391.304 of the TDCA**

119.    Plaintiff realleges the above paragraphs against Defendant Amex as though fully set forth herein.

120.    Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

121.    The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

122.    Amex is a "debt collector" as defined by Tex. Fin. Code Ann. §§ 392.001(5)-(6). Section 392.001(6) defines "[d]ebt collector" to include a "person who . . . indirectly engages in debt collection." Amex acted a "debt collector" because Amex engaged in "debt collection" as defined by § 392.001(5) contracting with NCI to use the Optima Opportunity Letter to entice consumers like Plaintiff to obtain credit as a result of paying the full amount of a debt owed to Amex.

123.    Section 391.304 of the TDCA, generally states, "a debt collector may not use a fraudulent, deceptive, or misleading representation....."

124.    Amex violated Section 391.304 of the TDCA when it caused and authorized NCI to provide Plaintiff and others similarly situated with false, deceptive, or misleading offers of regaining card membership in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

125.    As set forth above, the Opportunity Offer was illusory and thus false, deceptive, and/or misleading because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

126.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an

effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

127.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters by NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant Amex and in Plaintiff's favor and in favor of putative class members:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

d.  Award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter;

e.  Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b).

## Count IX – The Optima Opportunity Letter Violates § 391.304(8) of the TDCA

128.    Plaintiff realleges the above paragraphs against Defendant Amex as though fully set forth herein.

129.    Section 391.304(8) of the TDCA, prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt…"

130.    Amex violated Section 391.304(8) of the TDCA when it provided Plaintiff and others similarly situated with illusory offers of regaining card membership in exchange for

the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

131.    As set forth above, the Opportunity Offer was illusory and thus false because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

132.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

133.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters by NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant Amex and in Plaintiff's favor and in favor of putative class members:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

d. Award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter; and

    e.    Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b).

**Count VIII - The Optima Opportunity Letter Violates § 391.304(19) of the TDCA**

134.    Plaintiff realleges the above paragraphs against Defendant Amex as though fully set forth herein.

135.    Section 391.304(19) of the TDCA, prohibits a debt collector from using "any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

136.    Amex violated Section 391.304(19) of the TDCA when it provided Plaintiff and others similarly situated with false and deceptive offers of regaining card membership in exchange for the full payment of the subject debts - where the letters misrepresented that the character of the subject debts as being paid off could result in the issuance of a Optima Card.

137.    As set forth above, the Opportunity Offer was illusory and thus false because Amex had the ability to pre-screen recipients to determine whether Plaintiff and similarly situated debtors with high account balances owed to Amex and other creditors would *not* qualify for an Optima Card before the mailing of the Optima Opportunity Letter.

138.    Despite having the ability to perform a credit check to learn that Plaintiff and others like him who owed a high balance to Amex would not likely meet minimum monthly payment obligations, Defendants caused the Optima Opportunity Letter to be sent in an effort to entice consumers like Plaintiff to pay off their debt to Amex with no chance of regaining some form of Card Membership with Amex or obtaining the offered Optima Card.

139.    The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed Optima Opportunity Letters by NCI where the Optima Opportunity Letters offered an American Express Optima Card where American Express had the ability to pre-

screen the viability of offers and American Express knew that the recipients would not qualify for the proposed offer.

**Wherefore,** Plaintiff THOMAS LACOUR respectfully requests that this Honorable Court enter the following relief against Defendant Amex and in Plaintiff's favor and in favor of putative class members:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

c. Award Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2);

d. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Award class members actual damages if they paid their subject debts after receiving the Optima Opportunity Letter; and

f. Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. § 392.403(b).

*Plaintiff demands a jury trial*

*on all applicable causes of action*

/s/ James C. Vlahakis                          Dated: 12/31/2019
James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 581-5456
jvlahakis@sulaimanlaw.com